**SETH P. CHAZIN (CA SBN 133777)**
**Attorney at Law**
**LAW OFFICES OF SETH P. CHAZIN**
**1164 Solano Ave**
**Albany, CA 94706**
**Telephone: (510) 507-8100**
**Facsimile: (510) 525-0087**


**Attorney for Defendant**
**MERUDH PATEL**


# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **No.  5:17-cr-00069-BLF** |
| ) | |
| **Plaintiff,** ) | |
| ) | **DEFENDANT MERUDH PATEL'S REPLY** |
| **vs.** ) | **TO UNITED STATES' RESPONSE TO** |
| ) | **DEFENDANT'S SENTENCING** |
| **MERUDH PATEL,** ) | **MEMORANDUM** |
| ) | |
| **Defendant.** ) | **Date: October 17, 2017** |
| ) | **Time: 9:00 A.M.** |
| ) | **Judge: Hon. Beth Labson Freeman** |
| ) | **Courtroom: Courtroom 3, 5th Floor** |

Defendant MERUDH PATEL hereby submits the following reply to the United States' Response to Defendant's [sic] Sentencing Memorandum (hereinafter, "Response"), filed under seal on October 13, 2017.

## I.
### A VARIANCE BASED IN PART ON THE OFFENSE CONDUCT BEING MR. PATEL'S FIRST CRIMINAL OFFENSE AND THAT THE OFFENSE IS A MARKED DEVIATION FROM AN OTHERWISE LAW-ABIDING LIFE IS SUPPORTED BY THE FACTS AND THE LAW.

Notably, Mr. Patel is not requesting a departure for aberrant behavior under §5K2.20 of the United States Sentencing Guidelines (hereinafter, "Guidelines"). Instead, he is requesting a

variance under 18 U.S.C. § 3553(a) based, in part, on the fact that this is his first offense and that the offense conduct constitutes a marked deviation from an otherwise law-abiding life.

The government cites a number of out-of-circuit cases to support its argument that Mr. Patel does not qualify for a "variance departure" based on aberrant conduct. Response, p. 2:19. Importantly, each of these cases involves a departure under §5K2.20 of the Guidelines (or its predecessor), not a variance under 18 U.S.C. § 3553(a) as Mr. Patel has requested here. See *United States v. Hillyer*, 457 F.3d 347 (4th Cir. 2006) (illegal dredging activity); *United States v. DeVegter*, 439 F.3d 1299 (11th Cir. 2006) (bribery of financial adviser); *United States v. Dickerson*, 381 F.3d 251 (3d Cir. 2004), as amended (Aug. 28, 2006) (drug importation); *United States v. May*, 359 F.3d 683 (4th Cir. 2004) (cross-burning hate crime).

In addition, it is worth noting that while the court of appeal in *Hillyer* ruled that the district court's §5K2.20 departure for aberrant behavior was not supported by the evidence, the district court ultimately affirmed the original sentence of probation at resentencing (in fact, the term of probation was decreased from three years to two years). See Eastern District of North Carolina Case No. 2:04-CR-00018-BO, Docket 63. This represented a significant downward variance under 18 U.S.C. § 3553(a) from the applicable Guideline range of 12 to 18 months.

The one Ninth Circuit case that the government cites actually supports Mr. Patel's request for a downward variance based, in part, on aberrant conduct. In *United States v. Colace*, 126 F.3d 1229, 1232 (9th Cir. 1997), the Ninth Circuit explained that Colace was not entitled to a downward departure based on a finding of aberrant conduct because he "had plenty of opportunity to reflect on his criminal conduct during the two months he flouted the law. He chose banks in different counties because, by his own admission, he was too well known in his home town, a decision that reflects planning and forethought. He did not withdraw from his criminal life-style until he was arrested. He committed the separate crime of fleeing probation and, again, did not cease his lawlessness until he was arrested eight months later. As we said in *United States v. Green*, 105 F.3d 1321, 1323 (9th Cir.1997), '[w]hile we have not required that the behavior be a single spontaneous or thoughtless act involving no planning, we have to some extent relied on the concept of 'singularity or spontaneity.''" *Id.* at 1232. "Over a period of eleven weeks, [Colace]

DEFENDANT MERUDH PATEL'S REPLY TO UNITED STATES' RESPONSE
TO DEFENDANT'S SENTENCING MEMORANDUM

committed at least a dozen bank robberies, each requiring independent thought and planning, each putting a new set of victims in jeopardy, each yielding separate loot. And, there was his long flight from custody which, unlike the district court, we consider to be Colace's responsibility, not the government's." *Id.*

In contrast, Mr. Patel engaged in a single scheme to use pirated credentials from a single individual (E.D.) to post unauthorized advertising on Facebook over a period of one to two months. Moreover, the offense is Mr. Patel's first, and is clearly a marked deviation from an otherwise law-abiding life. As a departure under §5K2.20 is not sought here, Mr. Patel's request does not need to meet the specific requirements of that section, but rather, is one factor to consider in determining whether the "history and characteristics of the defendant" support a variance under 18 U.S.C. § 3553(a).

As explained by the Ninth Circuit in *United States v. Lam*, 20 F.3d 999, 1003 (9th Cir. 1994), "[s]ome courts have insisted that to be truly aberrant the behavior must be a single spontaneous or thoughtless act that involves no planning and that there can be no consideration of whether it was a first offense. See, e.g., *United States v. Marcello*, 13 F.3d 752, 760–61 (3d Cir.1994). We, however, have not been so restrictive." Later, in *United States v. Rojas-Millan*, 234 F.3d 464 (9th Cir. 2000), the court noted:

> There are … several factors that courts may consider when assessing whether behavior is aberrant. The court may, for example, consider whether the conviction was for a first offense. [footnote omitted] *United States v. Lam*, 20 F.3d 999, 1003-04 (9th Cir.1994). It may evaluate whether or not the defendant engaged in a significant period of advanced planning or reflection, his motivation for undertaking the unlawful scheme, and whether the action was a one-time event or part of a regular pattern. See [*United States v. Green*, 105 F.3d 1321, 1322-1323 (9th Cir.1997)]; *United States v. Pierson*, 121 F.3d 560, 564-65 (9th Cir.1997) (holding that the defendant was not eligible for an aberrant behavior departure where his "participation in the cocaine distribution scheme required substantial planning and involved hundreds of overt acts spanning a period of at least eight months") …. If a district court finds a "convergence," *United States v. Fairless*, 975 F.2d 664, 667 (9th Cir.1992), of these or similar factors demonstrating that a defendant's actions "constitute a

single act of truly aberrant behavior," *United States v. Dickey*, 924
F.2d 836, 838 (9th Cir.1991), a downward departure is justified.

*Rojas-Millan*, 234 F.3d at 475.[1]

Similarly, in *United States v. Paul*, 561 F.3d 970 (9th Cir. 2009), the Ninth Circuit sanctioned reliance on the fact that the offense was the defendant's first as a mitigating factor and as a basis for a lower sentence. In *Paul,* the defendant was convicted by a jury of committing theft from a local school district. The offense conduct spanned approximately three months and involved numerous checks totaling $17,868. Her Guideline range was 10 to 16 months. The Ninth Circuit found that two within-Guidelines sentences imposed by the district court—first 16 months and then 15 months—were both unreasonable: In finding the sentence too high, the court specifically noted, "Paul was a first-time offender with absolutely no criminal record whatsoever…." *Id.* at 973.

Thus, it is clear from this post-*Booker* Ninth Circuit case, the Court may properly rely on the fact that the offense is the defendant's first in granting a downward variance.


## II.

## MR. PATEL OCCUPIED A MINOR ROLE COMPARED TO D.L. AND THE OTHER COCONSPIRATORS.

Many of the facts recited in D.L.'s previously undisclosed declaration and the government's brief are facts that have never before been offered, either in the government's initial sentencing memorandum or in the Probation Office's Presentence Investigation Report ("PSR"), and are uncorroborated. For example, the government alleges through this declaration that Mr. Patel and D.L. "established" 4th Gear Media together in January 2013 as 65/35 percent "partners" and ultimately shared all profits 50/50. See Response, p. 3:23-28. In fact, 4th Gear Media was

---

[1] The court in this pre-*Booker* case analyzed aberrant conduct in the context of a Guidelines departure under 18 U.S.C. § 3553(b) since a variance under 18 U.S.C. § 3553(a) was not available at that time. Again, Mr. Patel is not here requesting a departure but a variance based on his history and characteristics as a first-time offender who has lived an otherwise law-abiding life. Nonetheless, the factors discussed in the context of a departure are instructive.

4
DEFENDANT MERUDH PATEL'S REPLY TO UNITED STATES' RESPONSE
TO DEFENDANT'S SENTENCING MEMORANDUM

always D.L.'s sole company and Mr. Patel never had any ownership interest in it whatsoever. As stated in the PSR, Mr. Patel was D.L.'s employee, not his "partner." See PSR, ¶ 11 ("Patel, who worked for D.L. …"); ¶ 64 ("4th Gear Media is owned by co-conspirator D.L."); see also ¶ 13 (D.L. also conspired with another individual, Justin Daves, to post advertisements on the MyThings accounts, showing that he was directing other lower-level conspirators like Mr. Patel to place ads).

It is also worth noting that D.L. has a strong incentive to minimize his culpability and pin as much on Mr. Patel as possible to reduce his sentencing exposure. Thus, his statements are not inherently credible.

In addition, the government argues that Mr. Patel was "involved from the creation of the scheme." Response, p. 3:21. This is not possible as both the government and D.L. admit that it was J.R. that initially had the idea to steal the credentials. He then passed them to E.D., who contacted D.L., who then—at the end of the chain—looped in Mr. Patel to accomplish the technical aspects of the scheme. See Response p. 4:6 – 4:3; see also p. 5:2 (Mr. Patel "actively participated in [the scheme] by using his technical capabilities."). Both the government and D.L. also agree that the proceeds went directly to D.L.'s company, 4th Gear Media, and it was D.L. who came to an agreement with E.D. regarding what percentage he would be paid, and then doled out the profits to E.D. (who paid J.R.) and Mr. Patel. *Id.*[2]  In fact, these facts only bolster Mr. Patel's argument for a minor role reduction.

In sum, the facts cited by the government in opposing the minor role reduction—i.e., that Mr. Patel was involved *near* the beginning of the month-long scheme, was aware that the invoice accounts were stolen, used the stolen accounts to place advertisements on Facebook, and was financially rewarded—are not sufficient to undermine Mr. Patel's strong factual and legal claim for a sentence reduction. See Response at p. 5:14-16.

---

[2] The government's continued reference to the allegation that Mr. Patel and D.L. each made $330,000 from the scheme directly contradicts its express stipulation that Mr. Patel received approximately $67,000 in relation to the invoice accounts.

DEFENDANT MERUDH PATEL'S REPLY TO UNITED STATES' RESPONSE
TO DEFENDANT'S SENTENCING MEMORANDUM

**III.**

**THE HARSH IMPACT OF THE LOSS GUIDELINES IS A FACTOR TO CONSIDER UNDER 18 U.S.C. § 3553(a).**

The government does not cite a single case or other authority in support of its position that the loss guidelines are reasonable, other than citing the Guidelines themselves. This is not sufficient to rebut Mr. Patel's argument, including the legal authority supporting his position, that the loss guidelines are too harsh as applied to his case.

**IV.**

**MR. PATEL'S GAMBLING LOSSES WITH D.L.'S MONEY ARE IRRELEVANT.**

The government cites additional facts regarding Mr. Patel's gambling losses of D.L.'s money. See Response at p. 6:19-28. These facts are entirely irrelevant to the sentencing determination, other than to underscore Mr. Patel's serious gambling addiction at the time of the offense.

**Dated: October 15, 2017**                    **Respectfully submitted,**


_____/s/_____
**SETH P. CHAZIN**
**Attorney for Defendant MERUDH PATEL**

DEFENDANT MERUDH PATEL'S REPLY TO UNITED STATES' RESPONSE
TO DEFENDANT'S SENTENCING MEMORANDUM